✓ FILED ___ ENTERED
___ LOGGED _____ RECEIVED

**1:50 pm, Apr 05 2023**
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF A GMAIL ACCOUNT** | **Case No.** _____ 1:23-mj-01008-JMC <br><br> **Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### APPLICATIONS FOR SEARCH WARRANTS

I, Deputy United States Marshal ("DUSM") Gerry Washington, being first duly sworn, state as follows:

### Introduction and Agent Background

1. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7)—that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

2. I am a DUSM with the United States Marshals Service (USMS) and have been since December 2010. I am charged with enforcing federal laws in all jurisdictions of the United States, its territories, and possessions. I am currently assigned to the Investigative Operations Division section for the USMS in the District of Maryland. I have conducted criminal and fugitive investigations throughout my career. I have prepared, and assisted in preparing, numerous search warrants regarding the tracking and locating of federal fugitives based on their use of cellular phones. Throughout my career, I have encountered numerous methods that fugitives have used to hinder law enforcement efforts to track their whereabouts including, but not limited to, turning the phones on and off when not in use, having the phones subscribed in family members or friends' names, and carrying and using multiple cellular phones on their person.

3.     Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrants, I have not included every detail or every aspect of the investigation.    Rather, I have set forth only those facts that I believe are necessary to establish probable cause.    I have not, however, excluded any information known to me that would defeat a determination of probable cause.    The information contained in this Affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers and other individuals.    All conversations and statements described in this Affidavit are related in substance and in part unless otherwise indicated.    Summaries and descriptions, including quotations of recorded conversations (if any) are based on a review of audio recordings and draft transcripts.

4.     This is an affidavit provided in support of applications for a search warrant pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A). Specifically, I seek a search warrant to require Google LLC ("Google") to disclose to the government records and other information in their possession that pertain to one Google account (the "**Target Account**"), as further described herein and in Attachments A. Upon receipt of the information described in Section I of Attachments B, government-authorized persons will review the information to search and seize the information described in Section II of the same attachments.

5.     The **Target Account** is as follows:

a.     Attachment A: Information and records associated with the Google account RCoop2023@gmail.com (the **Target Account**), stored at premises owned, maintained, controlled, or operated by Google, an electronic communications service and/or remote computing service provider with offices located at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

6.      Since this Affidavit is being submitted for the limited purpose of securing the requested warrants, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only those facts relevant and necessary to establish probable cause. The information in this Affidavit is based on conversations with other law enforcement officers and others, my review of various documents and records, and, where specified, my personal observations and knowledge.

7.      Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that evidence in violation of 18 U.S.C. § 3416 (failure to appear) related to Roy McGrath will be found on this account.   Your affiant further submits that there is probable cause to search the information described in Attachments A for evidence of these crimes and instrumentalities, as further described in Attachments B.

## Jurisdiction

8.      This Court has jurisdiction to issue the requested warrants because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).   As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Maryland. *See* 18 U.S.C. § 3237.

## Probable Cause

9.      The United States is investigating possible violations of, *inter alia*, 18 U.S.C. § 3146 (failure to appear) Roy McGrath.

10.     McGrath was indicted on October 5, 2021. On October 22, 2021, McGrath had his initial appearance before Magistrate Judge Thomas DiGirolamo, and released on conditions. One condition was that McGrath appear "in court as required."

11.     On March 13, 2023, trial was scheduled to begin in United States v. McGrath, DLB-21-399, in the District of Maryland at 9:30AM before U.S. District Court Judge Deborah L. Boardman.  McGrath failed to appear for court, and Judge Boardman issued a warrant for his arrest.

12.     McGrath's attorney stated that McGrath was supposed to fly to Maryland on March 12, 2023, the night before trial. However, McGrath did not have a reservation and investigators believe he did not board any flight.   McGrath was last seen the morning of March 13, 2023, by his wife in Florida.

13.     On or about March 20, 2023, a reporter for a Baltimore publication received an email from the email address RCoop2023@gmail.com (the **Target Account**). The email purported to be from "Ryan Cooper," the author of a forthcoming self-published book about McGrath. Investigators have been unable to locate any individual named "Ryan Cooper" who wrote about McGrath. McGrath's own attorney publicly stated that, "maybe Ryan Cooper is really Roy McGrath." Investigators also believe "Cooper" may be McGrath, or may be an accomplice of McGrath's.

14.     According to a public news report, an individual identifying themselves as "Ryan Cooper" called the publication but refused to provide identifying details about himself. According to a published account, the individual who called did not sound like McGrath to the reporter.

15.     According to subpoena returns provided by Google, the **Target Account** is registered to the name "Ryan Cooper" and was opened on March 13, 2023 (the day McGrath was due to appear in Court), and is linked to a Visa credit card belonging to McGrath.

<u>Additional Background Concerning Google</u>

16.     In my training and experience, I have learned that Google provides a variety of online services, including electronic mail, cloud storage, digital payments, location, calendar, advertising, and productivity applications, which can be accessed through a web browser or mobile applications.   Google also offers to anyone, whether or not they have a Google account, a free web browser called Google Chrome and a free search engine called Google Search.

17.     In addition, Google offers an operating system for mobile devices, including cellular phones, known as Android.   Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google account when they first turn on the device.

18.     Registering for a Google account automatically generates an email address and account at the domain gmail.com, such as the Target Account identified in Attachment A.   During the registration process, Google asks subscribers to provide basic personal information, including the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the Target Offenses because, for example, the information can be used to provide clues for identifying the account's user or users even if the subscribers insert false information to conceal their identity.

5

19. The Google email address will be the log-in username for access to the Google account. Once logged into a Google account, a user can connect to a range of Google services offered to the general public, including features such as email, calendar services, online file storage, video streaming, locations history, payment services, advertising services, and tools related to the administration of user-created websites.

20. Google advertises its services as "One Account. All of Google working for you." Once logged into a Google account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google account across services, described further after the description of services below.

21. Google provides email services (called Gmail accounts) through email addresses at gmail.com. Gmail can be accessed through a web browser or a mobile application. Additional email addresses ("recovery," "secondary," "forwarding," or "alternate" email addresses) can be associated with the Google account by the user. Google preserves emails associated with a Google account indefinitely, unless the user deletes them. For instance, if an email is sent to a subscriber of Google, it is typically stored in the subscriber's "inbox" or "mail box" on Google's servers until the subscriber deletes the email. When the subscriber sends an email, it is initiated at the user's computer, transferred via the Internet to Google's servers, and then transmitted to its end destination. Google likewise saves a copy of the sent email unless the email sender specifically deletes the email from Google's server. Accordingly, the computers of Google are likely to contain stored electronic communications (including retrieved and unretrieved email for Google's subscribers).

22. Beyond emails, a Google subscriber can also store a wide array of other files on

servers maintained and/or owned by Google, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to e-mails), documents, payment information, and online advertising campaigns. Further examples of files stored on Google servers are set forth below. In my training and experience, such information may constitute evidence of the Target Offenses because, for example, the information can be used to help identify and attribute the conduct of the account's user or users even if the subscribers insert false information to conceal their identity.

23.    In my training and experience, Google typically retains certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, Google often have records of the IP address used to register the account and the IP addresses associated with account activity, which can help to identify the computers or other devices that were used to access the email account. In my training and experience, such information may constitute evidence of the Target Offenses because, for example, the information can be used to help identify and attribute the conduct of the account's user or users even if the subscribers insert false information to conceal their identity.

24.    In my training and experience, in some cases, users of a Google account will sometimes communicate directly with Google about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Google typically retain records about such communications, including records of contacts between the user and the

provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because, for example, the information can be used to identify the account's user or users.

25.     In my training and experience, I have learned that Google provides a variety of online, or "cloud," services in addition to email access, to the public. Based on my training and experience, such information constitutes evidence of the crimes under investigation where the information can be used to discover or confirm the identity of an online account's user or users at a particular time. These services include services that allow Google's users to store documents files and other content online so they can be remotely accessed from anywhere. These services also include applications such as Google Hangouts that allow its users to communicate with each other through voice, video, and text. These services also include features such as calendar services, online file storage, storage of browsing history, location history, and tools related to the administration of user-created websites.

26.     For instance, Google Drive is a cloud storage service automatically created for each Google account. Users can store an unlimited number of documents created by Google productivity applications like Google Docs (Google's word processor), Google Sheets (Google's spreadsheet program), Google Forms (Google's web form service), and Google Slides, (Google's presentation program). Users can also upload files to Google Drive, including photos, videos, PDFs, and text documents, until they hit the storage limit. Users can also set up their personal computer or mobile phone to automatically back up files to their Google Drive Account. Each user gets many gigabytes of space for free on servers controlled by Google and may purchase more through a subscription plan called Google One. In addition, Google Drive allows users to share

8

their stored files and documents with others and grant those with access the ability to edit or comment. Google maintains a record of who made changes when to documents edited in Google productivity applications. Documents shared with a user are saved in their Google Drive in a folder called "Shared with me." Google preserves files stored in Google Drive indefinitely, unless the user deletes them. Android device users can also use Google Drive to backup certain data from their device. Android backups on Google Drive may include mobile application data, device settings, and file downloads.

27.    Google further offers a cloud-based photo and video storage service called Google Photos. Users can share or receive photos and videos with others. Google Photos can be trained to recognize individuals, places, and objects in photos and videos and automatically tag them for easy retrieval via a search bar. Users have the option to sync their mobile phone or device photos to Google Photos. Google preserves files stored in Google Photos indefinitely, unless the user deletes them.

28.    Google also collects and retains data about searches that users conduct within their own Google account or using the Google Search service. Google also has the capacity to track the websites visited using its Google Chrome web browser service, applications used by Android users, and the use of Google applications by iPhone users. According to Google, this search, browsing, and application use history may be associated with a Google account when the user is logged into their Google account on the browser or device and certain global settings are enabled, such as Web & App Activity. Google also collects and retains data about the voice queries made to its artificial intelligence-powered virtual assistant, Google Assistant, on Android devices and associated it with the registered Google account if certain global settings are enabled, such as Voice & Audio Activity tracking. Google maintains these records indefinitely, unless the user

deletes them or opts in to automatic deletion of their location history.

29.     Google collects and retains data about the location at which Google account services are accessed from any mobile device, as well as the periodic location of Android devices, regardless of service usage. This location data can derive from a range of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google account signed-in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for their Google account, such as Location History or Web & App Activity tracking. The data retained may be both precision location data, like latitude and longitude coordinates derived from GPS, and inferential location data, such as the inference that a Google account is in New York because it conducts a series of searches about places to eat in New York and directions from one New York location to another. Google maintains these records indefinitely, unless the user deletes it or opts into automatic deletion of their location history.

30.     Google also operates Google Ads (formerly known as "Google AdWords"), which is online advertising platform developed by Google that allows advertisers to pay to display advertisements, service offerings, product listings, video content, and generate mobile application installs within the Google ad network to web users.  The advertisements may be placed in the results of search engines, such as Google Search, and on non-search websites, mobile apps, and videos.  Google further administers Google AdSense, which provides a way for publishers of online content to earn money by matching ads to the publisher's website based on the publisher's content and visitors.

31.     Google also offers the Google Analytics service, which lets an advertiser measure

the return on investment from advertising campaigns, as well as track activity on Flash, video, and social networking sites and applications.

32.     In addition, Google offers a free web browser service called Google Chrome that facilitates access to the Internet. Chrome retains a record of a user's browsing history and allows users to save favorite sites as bookmarks for easy access. If a user is logged into their Google account on Chrome and has the appropriate settings enabled, their browsing history, bookmarks, and other browser settings may be saved to their Google account.

33.     Google further offers a video platform called YouTube that offers Google accounts the ability to upload videos and share them with others. Users can create a YouTube channel where they can upload videos, leave comments, and create playlists available to the public. Users can subscribe to the YouTube channels of others, search for videos, save favorite videos, like videos, share videos with others, and save videos to watch later. More than one user can share control of a YouTube channel. YouTube may keep track of a user's searches, watch history, likes, comments, and change history to posted videos.

34.     Google also offers a blogging platform for Google accounts called Google Blogger, where users can upload blog posts, including photo and video content. Users can allow others to edit or share their blog posts or comment on their posts and control whether their blog is accessible through search engines or searches on Blogger. Blog content can be shared with other websites in real-time. Google maintains a record of Blogger activity with the account indefinitely, unless the user deletes it.

35.     A Google account can buy electronic media, like books, movies, and music, and mobile applications from the Google Play Store. Google Play records can include records of whether a particular application has been or is currently installed on a device. Users cannot delete

11

records of Google Play transactions without deleting their entire Google Account.

36.    Based on my training and experience, I also understand that when an individual uses an Android device for the first time, they are prompted to register the device to a new or existing Google account. Data about the use of the Android device is saved to the registered Google account, including device characteristics such as the device serial number, model type/number, and international mobile equipment identity (IMEI). In addition, users may opt-in to Android device backups to Google cloud servers. Android device backups are not saved as a unique backup file. Rather, data from the device is associated with the registered Google account and stored with similar data in the Google account. For example, photos and videos on the device are backed up to Google Photos; contacts are backed up to Google Contacts; events and appointments are backed up to Google Calendar; and files and certain application data are backed up to Google Drive. Google maintains these records indefinitely, though users may delete Android back-up files in the same manner as any other file associated with the relevant Google service.

37.    Google also maintains records of the device characteristics of iPhones used to access Google services, including the make and model of the device. Depending on user settings, those records may be associated with the Google account logged into the service in use on the device. Google maintains these records indefinitely, unless the user deletes them.

38.    Google integrates the various services described above to make it easier for Google accounts to access the full Google suite of services. Users accessing their Google account through their browser can toggle between Google services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout and Chat conversations pop up within the same browser window as Gmail. Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive. If someone shares a document with a

Google account user in Google Docs, the contact information for that individual will be saved in the user's Google Contacts. And if a user logs into their Google account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google account, depending on user settings.

39.     Google can also identify other Google accounts linked to a particular Google account based on common telephone number, common email accounts used as a secondary, alternate, or recovery accounts, common creation IP address or a common machine cookie that may have been linked to one of an account within the last 30 days. Based on my training and experience, such information also constitutes evidence of the crimes under investigation where the information can be used to discover or confirm the identity of an online account's user or users at a particular time and to identify other accounts used by the same user.

## Conclusion

40.     Based on the above, I request that the Court issue the proposed search warrants as evidence of the Target Offense will be found at the **Target Account**. Because this warrants will be served on the service providers who will then compile the requested records at a time convenient

to them, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Gerry Washington
Deputy U.S. Marshal
United States Marshals Service

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this 22 day of March, 2023.



The Honorable J. Mark Coulson
United States Magistrate Judge
District Court of Maryland

## <u>ATTACHMENT A – Google LLC</u>

**Property to Be Searched**

This warrant applies to records and information associated with the following Google account (the "**Target Account**") that are stored at premises owned, maintained, controlled, or operated by Google LLC ("Google"), a business with offices located at 1600 Amphitheatre Parkway, Mountain View, CA 94043:

- **RCoop2023@gmail.com**

**ATTACHMENT B—Google LLC**
**Particular Things to be Seized**

## I.     Files and Accounts to be produced by Google, LLC ("Google")

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, images, videos, or information that have been deleted but are still available to Google or have been preserved pursuant to a preservation request under 18 U.S.C. § 2703(f), Google is required to disclose the following information to the government for each account or identifier listed in Attachment A (collectively, "the Target Account") and certain accounts linked to the Target Account for the time period from March 12, 2023 to present:

1. **Target Account**. For each Target Account listed in Attachment A:

     a.     The contents of all communications and related transactional records for all Google Services ever used by the Target Account (such as Gmail, Google Hangouts) from March 12, 2023 to the present, including but not limited to incoming, outgoing, and draft e-mails, messages, calls, chats, posts, and other electronic communications; attachments to communications (including native files); source and destination addresses and header or routing information for each communication (including originating Internet Protocol (IP) addresses of e-mails); the date, size, and length of each communication; and any user or device identifiers linked to each communication (including cookies);

     b.     All records regarding identification of the Target Account, including names, addresses, telephone numbers, alternative e-mail addresses provided during registration, means and source of payment (including any credit card or bank account number), records of session times and durations (including IP addresses, cookies, device information, and other identifiers linked to those sessions), records of account registration (including the IP address, cookies, device information, and other identifiers linked to account registration), length of service and types of services utilized, account status, methods of connecting, and server log files;

     c.     The types of service utilized, account records and records and other information, including content, relating to those services;

     d.     All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files, including Google Photos;

     e.     All records of online search and browsing history associated with the Account or its users (such as through Google Search, Web & App Activity, and Google Chrome, including information collected through tracking cookies), including application usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated searches, including associated notifications and creation dates; all text typed into the Google Chrome address

bar or Google search bar, including URLs and IP addresses; all URLs or IP addresses clicked on; user settings; and all associated logs and change history;

f.      All records relating to means of communication linked to the account, including Google Hangouts, to include content, log-in IP addresses associated with session times and dates, account status, methods of connecting, and log files for chat conversations, video calls, Wi-Fi and/or date calls, and text messages;

g.      The contents of all chats associated with the account, including Google Hangouts in any format (text, audio, or video) including, but not limited to: stored, deleted, and draft chat communications, including attachments and links; the source and destination addresses associated with each communication, including IP addresses; the size and length of each communication; user settings; and all associated logs, including access logs and change history;

h.      The contents related transactional information of all records associated with the Target Account on Google Cloud storage;

i.      The files, contents, and transactional information associated with the Target Account related to Google Play and Google Play Music, including purchased and installed applications;

j.      All records indicating the location at which the account was active, such as Location History and Web & App Activity, including: GPS data; cell site/cell tower information; IP addresses; inferences drawn from account activity such as search history, advertising profiles, and file metadata (e.g. the user was in a given city or neighborhood at a particular time); all information associated with each location record, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, and inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car); and associated logs and user settings, including Timeline access logs and change history;

k.      The contents of all media associated with the Target Account on YouTube, whether active, deleted, or in draft, including: copies of videos and other media only if uploaded to, saved to, shared by or shared with the account; edits, comments, likes, chats, and other interactions, including associated URLs; search history; channels; subscriptions; subscribers, friends, and other contacts; playlists; connected applications; associated URLs for each record; creation and change history; privacy settings for each record; and all associated logs, including IP addresses, locations, timestamps, and device identifiers;

l.      A record of the Target Account's watch history, including: accessed URLs and their associated duration, privacy settings, upload timestamps, tags, IP addresses, change history, location information, and uploading account or identifier; the logs for each access by the account, including IP address, location, timestamp, and device identifier; and change history;

m.      All business and subscriber records associated with the Target Account on YouTube, including birthday; name; username and other identifiers; linked accounts; alternate or recovery emails; telephone numbers, including SMS recovery numbers; physical addresses;

account status; account creation date; account registration IP address; length of service; means and source of payment (including any credit or bank account number); associated devices; associated Android IDs; and associated logs and change history;

n.      All records for advertising transactions by the account relating to AdSense, including: advertiser, accepted bid, location of advertisement (including URL), and advertisement contact; all records for each Google Ads campaign by the account, including regional target, advertisement content, goal, budget, approval records, and engagement records; payment transactions; user settings; and all associated logs, including IP addresses, location data, timestamps, and change history;

o.      All records for advertising transactions by the account relating to Google Ads and AdWords for Advertisers, including: bid, location of advertisement (including URL), advertisement content, permitted advertisements, blocked advertisements, design and customization settings, and engagement records; payment transactions; user settings; and all associated logs, including IP addresses, location data, timestamps, and change history;

p.      All business and subscriber records associated with the account on AdSense, Google Ads, and AdWords by Google, including: name; user name; physical address; alternate or recovery emails; telephone numbers, including SMS recovery numbers; linked accounts; account status; account creation date; account registration IP address; length of service; associated devices; associated Android IDs; means and source of payment (including any credit or bank account number); and all associated logs and change history;

q.      All Google Blogger records associated with the account, including: files, folders, media, notes, lists, and other data uploaded, created, stored, or shared with the account, including drafts and deleted records; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, or third-party application associated with each record; user settings; and all associated logs, including access logs of each record, IP addresses, location data, and change history;

r.      All business and subscriber records associated with the account on Google Blogger, including: name; user name; physical address; alternate or recovery emails; telephone numbers, including SMS recovery numbers; linked accounts; account status; account creation date; account registration IP address; length of service; associated devices; associated Android IDs; means and source of payment (including any credit or bank account number); and all associated logs and change history;

s.      All records and transactional information pertaining to any other Google services associated with the Target Account, including Web & App Activity, Google Analytics, Chrome Sync, Business Profiles, Google Developers Console, Google Cloud Print.

t.      All device or user identifiers which have ever been linked to the Target Account, including but not limited to all cookies and similar technologies, Android ID, Advertising ID, unique application number, hardware model, operating system version, device serial number,

Global Unique Identifier ("GUID"), mobile network information, telephone number, Media Access Control ("MAC") address, and International Mobile Equipment Identity ("IMEI");

u.      All records and transactional information associated with the Target Account's use of Android, including subscriber information, IP address information and associated timestamps, device IDs, IMEIs, and MEIDs, Android hardware information, cell carrier/service provider; and apps downloaded to the device;

v.      All records of communications between Google and any person regarding the Target Account, including contacts with support services and records of actions taken; and

w.      Information about any complaint, alert, or other indication of malware, fraud, or terms of service violation related to the Target Account or associated user(s), including any memoranda, correspondence, investigation files, or records of meetings or discussions about the Target Account or associated user(s) (but not including confidential communications with legal counsel).

2.      **Linked Target Accounts**.   For any forwarding or fetching accounts of the Target Accounts, all other Google accounts linked to the Target Account because of cookie overlap, all other Google accounts that list the same phone number as the Target Account, all other Google accounts that list the same email address as the Target Account, and all other Google accounts that share the same creation IP address as the Target Account (collectively the "Linked Target Accounts"):

a.    For each Linked Target Account:
   i.      The name of the Target Account it was linked to; and
   ii.     The information that linked the Linked Target Account to the Target Account (forwarding or fetching account, cookie overlap, phone number, recovery email address, or creation IP address).
b.    The following information about the customers or subscribers of the Linked Target Account:
   i.      Names (including subscriber names, user names, and screen names);
   ii.     Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
   iii.    Local and long distance telephone connection records;
   iv.     Records of session times and durations, and the temporarily assigned network addresses (such as IP addresses and port numbers) associated with those sessions;
   v.      Length of service (including start date) and types of service utilized;
   vi.     Telephone or instrument numbers (including MAC addresses);
   vii.    Other subscriber numbers or identities (including the registration IP address); and
   viii.   Means and source of payment for such service (including any credit card or bank account number) and billing records.

3.     All records pertaining to communications between Google and any person regarding the user or the user's Google account, including contacts with support services and records of actions taken.

## II.     Information to be seized by the government

All information described above in Section I that constitutes evidence and fruits of violations of 18 U.S.C. § 3146 (failure to appear) by Roy McGrath since March 12, 2023, including for each account or identifier listed in Attachment A, information pertaining to the following:

a.     Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the Target Offenses and to the Google account owner;

b.     Evidence indicating the Google account owner's state of mind as it relates to the Target Offenses;

c.     The identity of the person(s) who created, used, or controlled the Google account, including records that help reveal the whereabouts of such person(s);

d.     Any records pertaining to Roy McGrath, Ryan Cooper, and travel arrangements;

e.     Any records relating to any software, web hosting or server rental or leasing services, or VOIP services that can be used in furtherance of the Target Offenses;

f.     Any records or information regarding the registration of accounts designed to obscure the real identity of the Target Account(s) user, such as the use of virtual private network accounts or proxy services;

g.     IP Logs, passwords, geo-locational information or other records that will help establish and link online accounts to an end user or to computers and electronic devices used and the location of those users or devices; and

h.     Any records or information that constitute evidence of the participant's knowledge or means of carrying out cybercrime, or transferring the proceeds of the cybercrime.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable. If the government identifies any seized communications that may implicate the

attorney-client privilege, law enforcement personnel will discontinue its review and take appropriate steps to segregate all potentially privileged information so as to protect it from substantive review. The investigative team will take no further steps regarding any review of information so segregated absent further order of the court. The investigative team may continue to review any information not segregated as potentially privileged.